**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| GWLS Holdings, Inc., et al. | ) |
| | ) Case No. 08-12430 (PJW) |
| | ) |
| Debtors. | ) (Jointly Administered) |

**MEMORANDUM OPINION**

Richard W. Riley
Duane Morris LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801

Jesse H. Austin, III
Paul Hastings Janofsky &
Walker, LLP
600 Peachtree Street, N.E.
Twenty-Fourth Floor
Atlanta, GA 30308

Kristine M. Shryock
Paul Hastings Janofsky &
Walker, LLP
75 E. 55th Street, First Floor
New York, NY 10022

Counsel for UBS AG, Stamford
Branch as First Lien Agent

Victoria W. Counihan
Dennis A. Meloro
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801

Nancy A. Mitchell
Allen G. Kadish
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166

Joseph P. Davis III
Greenberg Traurig, LLP
One International Place
Boston, Massachusetts 02110

Bevin M. Brennan
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601

Counsel for Grace Bay
Holdings, LLC and Grace Bay
Holdings II, LLC

Dated: February 23, 2009

**WALSH, J**   ~P̄ta. M̄vaN̄~

      This opinion is with respect to the order of this Court authorizing the credit bid sale of substantially all of Debtors', GWLS Holdings, Inc., <u>et al.</u> ("GWLS Holdings"), assets entered on January 23, 2009 ("Sale Order").  (Doc. # 677.)  The Sale Order included a provision stipulating that the purchased assets remained subject to a lien in the amount of $1 million in favor of Grace Bay Holdings, LLC and Grace Bay Holdings, II, LLC ("Grace Bay"), in its capacity as a lender pursuant to a credit agreement, pending further order of this Court regarding whether (i) such claim may be credit bid and (ii) Debtors' assets may be sold free and clear of such lien.  (<u>Id.</u> at p. 27, ¶ 32.)  For the reasons stated below, the Court holds that the claim may be credit bid and Debtors' assets sold free and clear of the $1 million lien.

## BACKGROUND

      On October 20, 2008, Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 <u>et seq.</u>  Debtors' pre-petition debt structure was comprised of: (i) a $337 million First Lien Credit Agreement ("Credit Agreement"), dated December 19, 2006, entered into by Greatwide Logistics Services, Inc. ("GLSI"), a Debtor entity, with certain lenders ("First Lien Lenders") and secured by first liens ("First Lien") in the Debtors' assets; and (ii) a $117 million Second Lien Credit Agreement, dated December 19, 2006, entered into

by GLSI with certain lenders ("Second Lien Lenders") and secured by second liens ("Second Lien") in the Debtors' assets. (Doc. # 595, ¶ 9-10; see also 1/14/09 Hearing, ex. 1.) As of the same date -- December 19, 2006 -- two related documents were executed: (i) the First Lien Guarantee and Collateral Agreement ("Collateral Agreement") was made by GLSI in favor of UBS AG, Stamford Branch ("UBS") as Collateral Agent on the First Lien ("First Lien Agent"); and (ii) the Intercreditor Agreement was made between UBS as First Lien Agent and UBS as Collateral Agent on the Second Lien ("Second Lien Agent"). (1/14/09 Hearing, ex. 4 and 2, respectively.) As of the petition date, approximately $366 million of the First Lien debt and $117 million of the Second Lien debt were owing. (Doc. # 595, ¶ 9-10.) There is a large number of First Lien Lenders, including Grace Bay which holds $1 million of the First Lien debt. All of the First Lien Lenders, except Grace Bay, consented to the credit bid. (Id. at ¶ 11.)

On October 21, 2008, Debtors filed a motion seeking approval of bidding procedures and the sale of substantially all of their assets. Attached to that motion was a copy of the Asset Purchase Agreement to implement the First Lien Lenders' credit bid. (Doc. # 25.) After a contested evidentiary hearing, on November 17, 2008, the Court entered an order approving the bidding procedures, including those provisions relating to the Asset Purchase Agreement. (Doc. # 154.) On January 8, 2009, Debtors

filed a Notice of Cancellation of the auction provided for by the bidding procedures due to lack of competing bids. (Doc. # 582.) Accordingly, the Debtors sought Court approval of the Asset Purchase Agreement.

On January 14, 2009, the Court held a contested evidentiary hearing as to Debtors' motion to authorize the sale of substantially all of the its assets free and clear of liens, claims, encumbrances, and interests in the form of a credit bid in accordance with 11 U.S.C. § 363(k) (authorizing the holder of a secured claim to submit a credit bid to purchase assets of a debtor's estate subject to the creditor's lien). (Doc. # 25.) Grace Bay filed an objection to the motion, arguing that the Credit Agreement required unanimous written consent of First Lien Lenders in order for the credit bid to proceed, and that, because Grace Bay, as a First Lien Lender, had not consented to the credit bid in writing, the sale could not proceed. (Doc. # 595.)

In particular, Grace Bay highlighted Sections 11.1 and 11.1(a) of the Credit Agreement, which read:

> 11.1 <u>Amendment and Waiver</u> . . . no Credit Document nor any terms thereof may be amended, supplemented or modified in accordance with the provisions of this subsection 11.1.
>
> * * *
>
> (a) no such waiver and no such amendment, supplement or modification shall (i) release all or substantially all of the Collateral or alter the relative priorities of the secured obligations entitled to the Liens of the

5

> Security Documents, in each case without the
> written consent of <u>all</u> Lenders . . . .

(1/14/09 Hearing, ex. 1, p. 80 (emphasis added).)  The definition
of "Credit Document" includes the Credit Agreement, the
Intercreditor Agreement, and "Security Documents," which includes
the Collateral Agreement.  (<u>Id.</u> at pp. 10, 22.)

In furtherance of its position, Grace Bay also pointed to
Section 3.1(a)(ii) of the Intercreditor Agreement, which provides:

> (a) So long as the Discharge of the First Lien
> Obligations has not occurred, whether or not
> any Insolvency or Liquidation Proceeding has
> been commenced by or against the Borrower or
> any other Credit Party:
>
> * * *
>
> (ii) the First Lien Collateral Agent <u>and</u> the
> First Lien Secured Parties shall have the
> exclusive right to enforce rights, exercise
> remedies (including setoff and the right to
> credit bid debt) and make determinations
> regarding the release, disposition, or
> restrictions with respect to the Collateral
> without any consultation with or the consent
> of the Second Lien Collateral Agent or any
> Second Lien Secured Party.

(<u>Id.</u> at ex. 2, pp. 9-10 (emphasis added).)  The Intercreditor
Agreement defines "First Lien Secured Parties" as "at any relevant
time, the holder of First Lien Obligations at such time, including
without limitation the First Lien Lenders and the agents under the
First Lien Credit Agreement."  (<u>Id.</u> at p. 4.)  The Intercreditor
Agreement defines "First Lien Lenders" as "Lenders" are defined in

the Credit Agreement, making Grace Bay a First Lien Lender under both agreements.  (<u>Id.</u> at p. 4; <u>id.</u> at ex. 2, p. 1.)

In response, the First Lien Agent and the Debtors highlighted certain sections of the Credit Agreement and the Collateral Agreement as confirmation of the validity of the credit bid without Grace Bay's consent.  Specifically, Section 10.1 of the Credit Agreement reads:

> Each of the Lenders and the Issuing Lenders hereby irrevocably appoints USB AG, Stamford Branch, to act on its behalf as . . . the Collateral Agent hereunder <u>and</u> under the other Credit Documents and authorizes such Agents to take such actions on its behalf and to exercise such powers as are delegated to such Agents by the terms hereof or <u>thereof</u>, together with such actions and powers as are reasonably incidental thereto.

(<u>Id.</u> at ex. 1, p. 77 (emphasis added).)  As noted, the definition of "Credit Documents" includes the Intercreditor Agreement and the Collateral Agreement.  Section 6.6 of the Collateral Agreement provides:

> If an Event of Default shall occur and be continuing, the Collateral Agent, on behalf of the other Secured Parties, may exercise . . . all rights and remedies of a secured party under the New York UCC or any other applicable law.  Without limiting the generality of the foregoing, the Collateral Agent . . . may sell, lease, license, sublicense, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof . . . .

(<u>Id.</u> at ex. 4, p. 20.)   As defined by Section 9.1(f)(i) of the Credit Agreement, "Event of Default" includes the commencement of a bankruptcy proceeding.  (<u>Id.</u> at ex. 1, p. 74.)

Also pertinent to Grace Bay's objection is Section 8.1 of the Collateral Agreement, which reads: "<u>Amendments in Writing</u>. None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except in accordance with Section 11.1 of the Credit Agreement." (<u>Id.</u> at ex. 4, p. 24.) The Credit Agreement, Intercreditor Agreement, and Collateral Agreement are governed by the laws of the State of New York.  (<u>Id.</u> at ex. 1, p. 89, § 11.9; <u>id.</u> at ex. 2, p. 30, § 8.10; <u>id.</u> at ex. 4, p. 26, § 8.10, respectively.)

During the hearing, the Debtors and Grace Bay confirmed that the sole issue was the contract interpretation issue of whether the applicable agreements required unanimous written consent of First Lien Lenders in order for the credit bid to proceed. (Doc. # 681, 69:13-15.)  Having only been presented with the agreements at the beginning of the hearing, the Court declined to rule on this issue from the bench; rather, the Debtors agreed to revise the Sale Order to include a provision (paragraph 32) stipulating that the purchased assets remained subject to a lien in the amount of $1 million in favor of Grace Bay Holdings, Inc. pending further order from this Court.  (<u>Id.</u> at 94:5-6, 101:2-8.)

After the Court entered the Sale Order as modified, the First Lien Agent and Grace Bay submitted supplemental memoranda as to the outstanding issue contained in paragraph 32 of that order. (Doc. # 710 and 712, respectively.)  The Debtors joined in the First Lien Agent's memorandum.  (Doc. # 711.)  In its supplemental submission, Grace Bay argues that this Court is not the appropriate forum to decide the issue of whether Grace Bay's lien should remain in place and that the issue should be the subject of a complaint. (Doc. # 712, ¶ 3.)  As the First Lien Agent filed its supplemental submission first, in a letter dated February 2, 2009, the Court directed the First Lien Agent and Debtor to submit their positions on the forum issue.  (Doc. # 713.)

## DISCUSSION

<u>Forum</u>

As to Grace Bay's contention that this Court is not the appropriate forum to address the instant contract interpretation issue, in their joint response to the Court's February 2, 2009 letter, Debtors and the First Lien Agent argue that Grace Bay has submitted to the jurisdiction of this Court through its objection to Debtors' motion seeking authorization for the sale of their assets, its filing of its supplemental response, and its lack of an appeal to the entry of the Sale Order.  (Doc. # 732, ¶ 7.) Further, as to Grace Bay's claim that the instant issue should be the subject of a complaint, Debtors and the First Lien Agent note

that Debtors' motion seeking authorization for the sale of their assets pursuant to 11 U.S.C. § 363(k) is not an adversary proceeding as provided for under Fed. R. Bankr. P. 7001, and, accordingly, no complaint is required for the Court to determine the instant issue.  (Id. at ¶ 4.)

I agree with Debtors and the First Lien Agent.  Grace Bay did not object to the Court resolving Grace Bay's objections at the hearing regarding the Sale Order, did not make any reservations regarding the instant contract interpretation issue, and did not file an appeal to the Sale Order.  In short, Grace Bay has submitted to this Court's jurisdiction.  Thus, as this Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, the Court will determine the instant issue. Indeed, the credit bid is an integral part of the sale of assets which is a core proceeding per 28 U.S.C. § 157(b)(2)(N).  Also, pursuant to Rule 7001, which lists the types of proceedings that are required to be determined by complaint, none of which is implicated by the instant issue, no complaint is required.

Contractual Right to Credit Bid

Pursuant to New York case law, a contract must be interpreted and enforced according to the plain meaning of its unambiguous terms: "In New York, it is well-settled that a 'written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'"  RMM

Records & Video Corp. v. Universal Music & Video Distrib., Corp., 372 B.R. 619, 622 (Bankr. S.D.N.Y. 2007) (quoting Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (N.Y. 2002)). Similarly, the plain meaning of words and phrases should be read to "give force and effect to all of [a contract's] provisions." Trump-Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp., 106 A.D.2d 242, 244 (N.Y. App. Div. 1985); see also Petracca v. Petracca, 302 A.D.2d 576, 577 (N.Y. App. Div. 2003) ("A contract should not be interpreted in such a way as to leave one of its provisions substantially without force or effect."). If a contract is clear and unambiguous, a court may not look "outside the four corners of the document." Vision Dev. Group, LLC v. Chelsey Funding, LLC, 43 A.D.3d 373, 374 (N.Y. App. Div. 2007) (citing W.W.W. Assoc., v Giancontieri, 77 N.Y.2d 157, 162 (N.Y. 1990)).

Grace Bay argues that Section 11.1(a) of the Credit Agreement requires unanimous consent of First Lien Lenders for any modification of the agreement, including the waiver and release of the First Lien Lenders' claims to the collateral securing their claims that is necessary to the sale of Debtors' assets. But Section 6.6 of the Collateral Agreement empowers the First Lien Agent to "dispose of or deliver the Collateral or any part thereof." (1/14/09 Hearing, ex. 4, p. 20.) This language allows the First Lien Agent to enter into the proposed credit bid on behalf of the First Lien Lenders.

Significantly, the Credit Agreement and the Collateral Agreement came into existence at the same time -- that is, December 19, 2006. Because the two agreements are effectively contemporaneous, Section 6.6 of the Collateral Agreement is not, as contemplated by Section 11.1(a) of the Credit Agreement, a waiver, amendment, supplement, or modification of the Credit Agreement. Indeed, Section 8.1 of the Collateral Agreement provides: "None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except in accordance with Section 11.1 of the Credit Agreement." Id. at p. 24. Obviously, Section 6.6 of the Collateral Agreement is not a waiver, amendment, supplement, or modification of the Collateral Agreement.

Moreover, Section 10.1 of the Credit Agreement provides that the First Lien Agent can "exercise such powers as are delegated to such Agents by the terms hereof and thereof together with such actions and powers as are reasonably incidental thereto." Id. at ex. 1, p. 77 (emphasis added). The reference to "thereof" undoubtedly includes the Collateral Agreement with the broad powers in Section 6.6 that are granted to the First Lien Agent. Further, the language regarding "together with such actions and powers as are reasonably incidental thereto" supports actions taken pursuant to § 363(k) of the Bankruptcy Code. This comports with Section 6.6 of the Collateral Agreement which recites that in addition to the rights and remedies set forth in the Collateral Agreement, the

First Lien Agent has "all rights and remedies of a secured party under New York UCC or any applicable law."  Id. at ex. 4, p. 20. Any applicable law includes the Bankruptcy Code in general, and § 363(k) in particular.

Also, the Collateral Agreement is only between the GLSI and certain of its subsidiaries and the First Lien Agent; the First Lien Lenders are not parties to that agreement.  It is abundantly clear, when interpreting both the Credit Agreement and the Collateral Agreement according to the plain meaning of their terms and giving force and effect to all provisions of each agreement, that the provision in the Collateral Agreement which allows the First Lien Agent to enter into the proposed credit bid on behalf of the First Lien Lenders is not overridden by Section 11.1(a) of the Credit Agreement.  Rather, it is only waivers, amendments, supplements, or modifications taking place after the agreements were executed on December 19, 2006 that must be made with written consent of all the First Lien Lenders.

In further support of its position, Grace Bay highlights Section 3.1(a)(ii) of the Intercreditor Agreement, asserting that the Section similarly provides that exercising the right to credit bid requires unanimous consent of all First Lien Lenders.  Doc. # 595, ¶ 14; Doc. # 712, ¶ 22; 1/14/09 Hearing, ex. 2, p. 10, § 3.1(a)(ii) ("the First Lien Collateral Agent and the First Lien Secured Parties shall have the exclusive right to enforce rights,

exercise remedies (including setoff and the right to credit bid debt) . . . .").   I find this argument strained and unpersuasive. The language of Section 3.1(a)(ii), which is clear and unambiguous, is intended to make clear that <u>both</u> the First Lien Agent <u>and</u> the First Lien Lenders rights are to the exclusion of the Second Lien Agent or any Second Lien Lender.   Any other reading would contradict the plain meaning of the language, and, moreover, likely bring the Intercreditor Agreement into conflict with provisions of the Credit Agreement and Collateral Agreement.   <u>See, e.g.</u>, 1/14/09 Hearing, ex. 1, p. 77, § 10.1 (authorizing the First Lien Agent "to take such actions on [the First Lien Lenders'] behalf and to exercise such powers as are delegated to the [First Lien Agent] by the terms of [the Credit Documents] . . ."); <u>id.</u> at p. 84, § 11.3 (providing that each of the rights, remedies and powers are cumulative and not exclusive rights); <u>id.</u> at ex. 4, p. 74, § 6.6 (empowering the First Lien Agent "to purchase the whole or any part of the Collateral" at any sale of the Collateral).

## CONCLUSION

Thus, I find that the First Lien Agent had the authority to enter the credit bid in accordance with § 363(k) of the Bankruptcy Code on behalf of all the First Lien Lenders as contemplated by the clear and unambiguous language of Section 6.6 of the Collateral Agreement.   Accordingly, the First Lien Agent may

14

credit bid Grace Bay's claim and Debtors' assets may be sold free and clear of the $1 million lien.

        Accordingly, counsel should  submit a supplemental order amending paragraph 32 of the Sale Order.