IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| GW Limited 51, Inc., f/k/a, GWLS | : | |
| Holdings, Inc., et al., | : | Case No. 08-12430 (PJW) |
| | : | |
| Debtors. | : | Jointly Administered |

---------------------------------------------------x

## JOINT LIQUIDATING PLAN OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady
Matthew B. Lunn
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

*Counsel for the Debtors*

**WILLKIE FARR & GALLAGHER LLP**
Paul V. Shalhoub
Robin S. Spigel
787 Seventh Avenue
New York, New York  10019-6099
(212) 728-8000

*Counsel for the Debtors*

**PEPPER HAMILTON, LLP**
David B. Stratton
Hercules Plaza
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE  19899
Telephone: (302) 777-6566
Fax: (302) 421-8390

*Counsel for the Official Committee of Unsecured Creditors*

**OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.**
Jenette A. Barrow-Bosshart
Melanie L Cyganowski
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Counsel for the Official Committee of Unsecured Creditors*

Dated:    August 19, 2009

# Table of Contents

ARTICLE I      DEFINITIONS AND CONSTRUCTION OF TERMS......................................1

ARTICLE II     TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ........................................................10

ARTICLE III    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ..................12

ARTICLE IV    TREATMENT OF CLAIMS AND EQUITY INTERESTS ..........................12

ARTICLE V     IMPLEMENTATION OF THE PLAN ........................................................15

ARTICLE VI    PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN.....................................................................................18

ARTICLE VII   PLAN ADMINISTRATOR.........................................................................20

ARTICLE VIII  [INTENTIONALLY DELETED]...................................................................22

ARTICLE IX    PROCEDURES FOR TREATING DISPUTED CLAIMS ...........................22

ARTICLE X     EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................24

ARTICLE XI    EFFECT OF CONFIRMATION .................................................................26

ARTICLE XII   CONDITIONS PRECEDENT ......................................................................31

ARTICLE XIII  RETENTION OF JURISDICTION ..............................................................32

ARTICLE XIV  MISCELLANEOUS PROVISIONS............................................................34

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x

In re                                  :    Chapter 11
                                       :
GWLS Holdings, Inc., et al.,           :    Case No. 08-12430 (PJW)
                                       :
            Debtors.                   :    Jointly Administered

----------------------------------------------------x


**JOINT LIQUIDATING PLAN OF THE DEBTORS AND THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**


GW Limited 51, Inc., f/k/a GWLS Holdings, Inc., and each of its debtor affiliates, as debtors and debtors in possession, and the Official Committee of Unsecured Creditors appointed in these cases, co-propose the following joint liquidating plan under section 1121(a) of title 11 of the United States Code:


## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

A.     <u>Definitions</u>.  As used herein, the following terms have the respective meanings specified below:

1.01.   <u>9019 Order</u> means the Order entered by the Bankruptcy Court on May 8, 2009, approving the Joint Motion of the Debtors and Debtors in Possession and the Official Committee of Unsecured Creditors, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, for Entry of an Order Approving Stipulation by and Between the Official Committee of Unsecured Creditors, the Debtors, the First Lien Agent, and Transportation 100, LLC Resolving Committee's Objection with Respect to the Sale of Substantially All of the Debtors' Assets to Transportation 100, LLC.

1.02.   <u>9019 Settlement</u> means the settlement approved by the 9019 Order.

1.03.   <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under Bankruptcy Code sections 503(b) and 507(a)(1), including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the business of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, and all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Bankruptcy Code section 330 or 503.  Any fees or charges assessed against the estates of

the Debtors under section 1930 of chapter 123 of title 28 of the United States Code shall be excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 14.04 hereof.

1.04.    Allowed means, with reference to any Claim or Administrative Expense Claim against the Debtors: (i) any Claim that has been listed by the Debtors in their respective Schedules, as such Schedules have been or may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; provided, however, that any such Claim listed in the Schedules that has been paid (a) by the Debtors after the Petition Date pursuant to order of the Bankruptcy Court, or (b) by the Purchaser as an Assumed Liability, shall not be considered an Allowed Claim; (ii) any Claim or Administrative Expense Claim allowed hereunder; (iii) any Claim or Administrative Expense Claim that is not Disputed; (iv) any Claim or Administrative Expense Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtor pursuant to a Final Order of the Bankruptcy Court or under the Plan; or (v) any Claim or Administrative Expense Claim that has been Allowed by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

1.05.    Assumed (including the term "Assumption" and any variants and derivatives thereof) means assumed by the Purchaser or New Subsidiary, as applicable, pursuant to the applicable Sale Transaction Documents.

1.06.    Assumed Liabilities means "Assumed Liabilities," as defined under the Purchase Agreement.

1.07.    Assumed Liability means one of the Assumed Liabilities.

1.08.    Avoidance Action means any avoidance or equitable subordination or recovery actions under Bankruptcy Code sections 105, 502(d), 510, 542 through 551, and 553, that does not constitute a Purchased Asset.

1.09.    Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan, on which is to be indicated acceptance or rejection of the Plan.

1.10.    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.11.    Bankruptcy Court means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

1.12.   Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

1.13.   Bar Date means, as applicable, (i) for all Claims (excluding Claims held by governmental units), March 30, 2009 at 5:00 p.m. prevailing Eastern time, (ii) for Claims held by governmental units, April 20, 2009 at 5:00 p.m. prevailing Eastern time, and (iii) for all Administrative Expense Claims specified in Section 2.02 of the Plan, by 5:00 p.m. prevailing Eastern time on the day that is forty (40) days after service of notice of occurrence of the Effective Date, the dates and times established by the Bankruptcy Court as the deadlines to file proofs of such Claims and Administrative Expense Claims against the Debtors.

1.14.   Business Day means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.15.   Cash means legal tender of the United States of America and equivalents thereof.

1.16.   Causes of Action means, without limitation, any and all actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever owned by any of the Debtors, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.17.   Chapter 11 Cases means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors which are being jointly administered under case caption In re GW Limited 51, Inc., f/k/a GWLS Holdings, Inc., et al., Chapter 11 Case No. 08-12430 (PJW), and are currently pending before the Bankruptcy Court.

1.18.   Claim shall have the meaning set forth in Bankruptcy Code section 101.

1.19.   Class means a class of holders of Claims or Equity Interests as set forth in Article III of the Plan.

1.20.   Class 5 Distribution means the aggregate amount of Cash or other funds of the Debtors (including, without limitation, the amount remaining in the Wind Down Account after the satisfaction of wind-down expenses) available for payment of the Allowed Claims of General Unsecured Creditors, after the payment in full of Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Tax Claims, and Allowed Other Secured Claims.

1.21.   Closing means the closing of the Sale Transactions.

1.22.   Closing Date means February 20, 2009.

1.23.    Collateral means any property or interest in property of the estates of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.24.    Committee means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time.

1.25.    Company means GWLS, Greatwide, and their respective Debtor subsidiaries.

1.26.    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.27.    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

1.28.    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129, which shall be in form and substance reasonably satisfactory to the Debtors and the Committee.

1.29.    Cure Amounts means the amounts (including amounts of compensation for actual pecuniary loss) as of the Petition Date required to be paid or reserved in connection with the assumption (or assumption and assignment) of all executory contracts and unexpired leases that may be assumed pursuant to Section 8.01 of the Plan and which shall be listed on Schedule 8.01(a) which shall be filed on or before five (5) days prior to the Voting Deadline.

1.30.    Debtors in Possession means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code sections 1101, 1107(a), and 1108.

1.31.    Debtors means each of the entities listed on Exhibit A annexed hereto.

1.32.    Deficiency Claim means the First Lien Lenders' Allowed Claim against the Debtors and the Debtors' estates established by the Sale Order in the amount of $38,151,689.20. The Deficiency Claim does not and shall not include any indemnification claims arising under the First Lien Credit Agreement.

1.33.    Disbursing Agent means, for purposes of making distributions under the Plan, the Reorganized Debtor or a designee thereof (including the Plan Administrator).

1.34.    Disclosure Statement means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

1.35.    Disclosure Statement Order means the order of the Bankruptcy Court approving the Disclosure Statement, which shall be in form and substance reasonably acceptable to the Debtors and the Committee.

1.36.  **Disputed** means, with reference to any Claim or Administrative Expense Claim, (i) any Claim or Administrative Expense Claim proof of which was timely and properly filed, and which is disputed under the Plan or as to which the Debtors or the Committee have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and (ii) any Claim or Administrative Expense Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

1.37.  **Distribution** means a distribution of Cash or other property pursuant to the Plan.

1.38.  **Distribution Date** means any date that is: (a) the Effective Date; (b) the Initial Distribution Date; (c) any Interim Distribution Date; or (d) the Final Distribution Date.

1.39.  **Distribution Record Date** means the Confirmation Date.

1.40.  **Effective Date** means such day that is the business day as soon as reasonably practicable after all conditions to the occurrence of the effective date set forth in Section 10.02 hereof have been satisfied or waived.

1.41.  **Eligible Unsecured Creditors** means the holders of Allowed General Unsecured Claims against the Debtors entitled to participate in or receive a distribution in connection with the Litigation Give-up, provided however, the following shall not be Eligible Unsecured Creditors: (i) unsecured claim holders whose claims have been disallowed by Final Order of the Bankruptcy Court, (ii) Secured Claim holders, (iii) Administrative Expense Claim holders, (iv) Priority Tax Claim holders and Other Priority Claim holders, (v) Equity Interest holders, (vi) Intercompany Claim holders, (vii) the First Lien Agent or First Lien Lenders or any of their affiliates or related entities, provided that the claim of such parties relates to the First Lien Credit Agreement, and (viii) any person or entity that objected or objects to Bankruptcy Court approval of the 9019 Settlement or objects to confirmation of the Plan or approval of the Disclosure Statement on grounds relating to the 9019 Settlement, *pari passu* treatment of general unsecured creditors or the substantive consolidation of the Debtors provided by this Plan.

1.42.  **Equity Interest** means any share of common or preferred stock or other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.43.  **Excluded Assets** means "Excluded Assets" as defined under the Purchase Agreement.

1.44.  **Fee Claims** have the meaning given to them in Section 2.03 of the Plan.

1.45.  **Filed Fee Applications** shall have the meaning given to them in Section 5.07 of the Plan.

1.46.  **Final Distribution Date** means the first Business Day 20 days (or such longer period as may be reasonably determined by the Reorganized Debtor) after the date on which all Disputed Claims have been resolved by Final Order.

1.47.   Final Order means an order or judgment, as entered on the docket of the applicable court that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.48.   First Lien Agent means, in its capacity as such, UBS AG, Stamford Branch, as Administrative Agent and Collateral Agent under the First Lien Credit Agreement, and its permitted successors and assigns thereunder.

1.49.   First Lien Credit Agreement means that certain Credit Agreement, dated as of December 19, 2006, by and among Greatwide, the lenders from time to time party thereto, UBS Loan Finance LLC as Swing Line Lender, UBS AG, Stamford Branch, as Administrative Agent, Issuing Lender, and Collateral Agent, as amended, modified, supplemented or restated from time to time, and all attendant notes, instruments, agreements and other documents.

1.50.   First Lien Credit Agreement Claim means a claim against a Debtor arising pursuant to the First Lien Credit Agreement.

1.51.   First Lien Lenders means the financial institutions from time to time parties to the First Lien Credit Agreement and their respective affiliates, including the Issuing Bank as defined in the First Lien Credit Agreement.

1.52.   General Unsecured Claim means an unsecured nonpriority claim against a Debtor, including the Deficiency Claim, Second Lien Credit Agreement Claims and Mezzanine Facility Claims; provided, however, any First Lien Credit Agreement Claim, Administrative Expense Claim, Fee Claim or Intercompany Claim shall not be a General Unsecured Claim.

1.53.   Greatwide means GW Limited 1, Inc., f/k/a Greatwide Logistics Services, Inc.

1.54.   GWLS means GW Limited 51, Inc., f/k/a GWLS Holdings, Inc.

1.55.   Initial Distribution Date means the first Business Day 20 days after the Effective Date, or such longer period as may be reasonably determined by the Reorganized Debtor, to make initial Distributions under the Plan.

1.56.   Insurance Claim means any Claim arising from an incident or occurrence that is covered under one or more of the Debtors' insurance policies: (a) asserted or which can be asserted against the Debtors and/or the Debtors' insurers; or (b) asserted or which can be asserted against any current or former employee of the Debtors or any additional insured (to the extent such employee and additional insured, as applicable, is covered under such insurance policies).

1.57.   Intercompany Claim means a Claim with respect to an intercompany transfer of value by a Debtor against another Debtor.

1.58.   Interim Distribution Date means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Reorganized Debtor determines, in consultation

with the Post-Confirmation Oversight Committee, that an interim distribution should be made to holders of Allowed Claims in light of, inter alia, resolutions of Disputed Claims and the administrative costs of such a distribution.

1.59.   Lien shall have the meaning set forth in Bankruptcy Code section 101.

1.60.   Litigation Give-up means the $1,500,000 in cash from the First Lien Lenders' collateral recoveries paid into the Wind Down Account as the Unsecured Give-up Fund on the Closing Date.  The Unsecured Creditor Trustee shall hold the Litigation Give-up in an escrow or trust account for distribution pro rata to Eligible Unsecured Creditors after payment of all reasonable fees and expenses of the Unsecured Creditor Trustee.

1.61.   Mezzanine Facility means that certain Amended and Restated Senior Holdings Credit Agreement, dated as of December 19, 2006, as amended and restated as of April 30, 2007, by and among GWLS, the lenders party thereto, and UBS Securities LLC and Bear, Stearns & Co., Inc., as Joint Placement Agents, Joint Lead Arrangers, and Joint Bookrunners.

1.62.   Mezzanine Facility Claim means a claim against a Debtor arising pursuant to the Mezzanine Facility.

1.63.   New Subsidiary shall have the meaning given to such term in the Purchase Agreement.

1.64.   Other Priority Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a).

1.65.   Other Secured Claim means any Secured Claim, other than a First Lien Credit Agreement Claim, a Second Lien Credit Agreement Claim, or a Secured Tax Claim.

1.66.   Paid in Full, Payment in Full, or Pay in Full means, with respect to an Allowed Claim, payment in Cash or other consideration in an aggregate amount equal to the Allowed amount thereof.

1.67.   Person means an individual, a corporation, a partnership, a limited liability company, an association, a trust, a governmental authority, a labor union or other entity or organization.

1.68.   Petition Date means October 20, 2008.

1.69.   Plan means this chapter 11 liquidating plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time.

1.70.   Plan Administrator means such Person designated by the Committee and approved by the Debtors (which approval shall not be unreasonably withheld) and the Bankruptcy Court as Plan Administrator pursuant to Article VI of the Plan.

1.71.   Plan Administrator Agreement has the meaning given to such term in Section 7.01(b) of the Plan.  The form of the Plan Administrator Agreement, which shall be in form and substance reasonably satisfactory to the Debtors and the Committee, shall be contained in the Plan Supplement.

1.72.   Plan Administrator Professional Fees has the meaning given to such term in Section 7.02(a) of the Plan.

1.73.   Plan Documents means those documents necessary to effectuate the Plan following entry of the Confirmation Order, including those documents listed in Section 14.06 of the Plan and to be contained in the Plan Supplement (which shall be subject to revision and modification prior to the Effective Date).

1.74.   Plan Supplement means the document containing the forms of Plan Documents specified in Section 14.06 of the Plan, each of which shall be subject to revision and modification prior to the Effective Date.

1.75.   Post-Confirmation Date Committee Expenses shall have the meaning given to them in Section 5.07 of the Plan.

1.76.   Post-Confirmation Oversight Committee means the creditor or creditors that are selected by the Committee, and identified in a filing to be included in the Plan Supplement, to consult with the Plan Administrator after the Effective Date concerning the Plan Administrator's duties.

1.77.   Post-Confirmation Oversight Committee Professional Fees shall have the meaning given to them in Section 5.07 of the Plan.

1.78.   Priority Tax Claim means any Claim of a governmental unit of the kind specified in Bankruptcy Code sections 502(i) and 507(a)(8).

1.79.   Pro Rata means proportionate, so that, for example, the ratio of (a) the amount of all consideration distributed on account of an Allowed Claim to (b) the amount of such Allowed Claim is the same as the ratio of (a) the amount of all consideration distributed on account of all Allowed Claims in the Class in which such Claim is classified to (b) the amount of all Allowed Claims in such Class.

1.80.   Proponents means the Debtors and the Committee, as co-proponents of this Plan.

1.81.   Purchase Agreement means that certain Asset Purchase Agreement by and among Transportation 100, LLC as Purchaser, and Greatwide Logistics Services, Inc. and all domestic subsidiaries of Greatwide Logistics Services, Inc., as Seller, dated as of November 14, 2008, as such agreement may be amended, supplemented or modified from time to time.

1.82.   Purchased Assets means the "Purchased Assets," as defined in the Purchase Agreement.

1.83.   Purchaser means Transportation 100, LLC.

1.84.   Reorganized Debtor means such entity that is comprised of the substantively consolidated Debtors on and after the Effective Date.

1.85.   Sale Order means that certain order of the Bankruptcy Court dated January 23, 2009 approving the Sale Transactions.

1.86.   Sale Transactions means, collectively, the transactions consummated pursuant to the Purchase Agreement and Sale Order in accordance with the terms thereof.

1.87.   Schedules means the schedules of assets and liabilities, the lists of holders of Equity Interests, and the statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto filed with the Bankruptcy Court through and including the Confirmation Date.

1.88.   Second Lien Credit Agreement means that certain Credit Agreement, dated as of December 19, 2006, by and among Greatwide, the lenders from time to time party thereto and UBS AG, Stamford Branch, as Administrative Agent and Collateral Agent, as amended, modified, supplemented or restated from time to time, and all attendant notes, instruments, agreements and other documents.

1.89.   Second Lien Credit Agreement Claim means a claim against a Debtor arising pursuant to the Second Lien Credit Agreement.

1.90.   Second Lien Lenders means the lenders under the Second Lien Credit Agreement.

1.91.   Secured Claim means any Claim that is: (a) secured by a valid, perfected and enforceable lien on property in which the Estates have an interest and that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, to the extent of the value of the Claim holder's interest in the Estate, interest in such property as of the Confirmation Date; or (b) subject to setoff under section 553 of the Bankruptcy Code, or to the extent of the amount subject to setoff, each as determined pursuant to sections 506(a) and 1111(b) of the Bankruptcy Code.

1.92.   Secured Tax Claim means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 502(i) or 507(a)(8).

1.93.   Unsecured Creditor Trustee means the unsecured creditor trustee or disbursing agent selected by the Committee for the Unsecured Give-up Fund for the benefit of Eligible Unsecured Creditors.

1.94.   Unsecured Give-up Fund means a fund to be funded by the Litigation Give-up for the benefit of Eligible Unsecured Creditors and the satisfaction of the reasonable costs and expenses of the Unsecured Creditor Trust, including, but not limited to, reasonable professionals' fees and expenses (but which shall not be subject to any fees charged by the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a)(6)).

1.95.  Voting Deadline means the date specified in the Disclosure Statement, the ballots, or related solicitation documents approved by the Bankruptcy Court as the last date, as such date has been, and may be further, extended for holders of impaired Claims entitled to vote to submit their ballots with respect to this Plan.

1.96.  Wind Down Account means an account maintained by and funded in an initial amount equal to $5,000,000 by the Debtors on the Closing Date with cash collateral or advances under that certain Superpriority Debtor in Possession Credit and Guaranty Agreement, dated as of October 22, 2008, by and among Greatwide, the lenders from time to time party thereto, and UBS AG, Stamford Branch, as Administrative Agent, as amended, modified, supplemented or restated from time to time. On the Closing Date, the First Lien Lenders (a) deposited $3,500,000 into the Wind Down Account to be utilized to satisfy wind-down expenses and thereafter fund the Plan in accordance with the priorities and pursuant to the provisions of the Bankruptcy Code, and (b) caused $1,500,000 in cash from the First Lien Lenders' collateral recoveries, to be paid into the Wind Down Account on account of the Litigation Give-up.

B.  Interpretation; Application of Definitions and Rules of Construction.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Except for the rule contained in section 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. To the extent there is any inconsistency between any of the provisions of this Plan and any of the provisions contained in the Plan Documents to be entered into as of the Effective Date, the Plan Documents shall control.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.01.  Administrative Expense Claims.  Except: (a) to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment; or (b) as provided in Section 2.03 of the Plan with respect to Fee Claims, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, however, that: (i) Administrative Expense Claims that are Assumed Liabilities have been Assumed and shall be satisfied in accordance with the Purchase Agreement and shall not be an Obligation of the Debtors or Reorganized Debtor; and (ii) except to the extent provided in the preceding clause (i), Allowed Administrative Expense Claims

representing liabilities incurred in the ordinary course of business by the Debtors or liabilities arising under loans or advances to or other obligations incurred by the Debtors shall be paid in full and performed by the Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.02.  <u>Time for Filing Administrative Expense Claims</u>.  The holder of an Administrative Expense Claim, other than: (a) a Fee Claim; (b) a liability incurred but not yet due and payable in the ordinary course of business by a Debtor until after the fortieth (40th) day after service of notice of the occurrence of the Effective Date; (c) an Administrative Expense Claim that has been Allowed on or before the Effective Date; (d) an expense or liability incurred in the ordinary course of the Debtors' businesses on or after the Effective Date; or (e) fees of the United States Trustee arising under 28 U.S.C. § 1930, must file with the Bankruptcy Court and serve on the Debtors and the Office of the United States Trustee, notice of such Administrative Expense Claim so as to be received by 5:00 p.m. prevailing Eastern time on the date that is forty (40) days after service of notice of occurrence of the Effective Date.  Such notice must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Expense Claim; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  **Failure to file and serve such notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged**.

2.03.  <u>Professional Compensation and Reimbursement Claims</u>.  All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) (collectively, "<u>Fee Claims</u>") shall: (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court; and (ii) if granted such an award by the Bankruptcy Court, be paid in full such amount as are awarded by the Bankruptcy Court (A) no later than five (5) Business Days after the date an order is entered with respect to such award or (B) upon such other terms as may be mutually agreed upon between such holder of a Fee Claim and the Reorganized Debtor.  The Reorganized Debtor shall reserve and segregate Cash in an amount equal to accrued but unpaid Fee Claims as of the Effective Date, which Cash shall be used, until all Allowed Fee Claims have been paid in full, solely for the payment of Allowed Fee Claims.  Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than seventy-five (75) days after the Effective Date.

2.04.  <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors or, if after the Effective Date, the Reorganized Debtor, Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests, are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | Secured Tax Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | Other Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | First Lien Credit Agreement Claims | Impaired | Yes |
| Class 5 | General Unsecured Claims | Impaired | Yes |
| Class 6 | Insurance Claims | Impaired | Yes |
| Class 7 | Equity Interests in GWLS | Impaired | No (deemed to reject) |

# ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.01.   CLASS 1 - OTHER PRIORITY CLAIMS.

(a)   Impairment and Voting. Class 1 is unimpaired by the Plan. Each holder of an Allowed Other Priority Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)   Treatment. Except to the extent that a holder of an Allowed Other Priority Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Allowed Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

4.02.   CLASS 2 - SECURED TAX CLAIMS.

(a)   Impairment and Voting. Class 2 is unimpaired by the Plan. Each holder of an Allowed Secured Tax Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)     Treatment.  Except to the extent that a holder of an Allowed Secured Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall receive, at the sole option of the Debtors or, if after the Effective Date, the Reorganized Debtor, Cash in an amount equal to such Allowed Secured Tax Claim on the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable.

4.03.   CLASS 3 - OTHER SECURED CLAIMS.

(a)     Impairment and Voting.  Class 3 is unimpaired by the Plan.  Each holder of an Other Secured Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)     Treatment.  Except to the extent that a holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive: (i) Cash in an amount equal to such Allowed Other Secured Claim on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable; or (ii) such other treatment that leaves such Allowed Other Secured Claim unimpaired pursuant to section 1124(2) of the Bankruptcy Code.

(c)     Deficiency Claims.  To the extent that the value of the Collateral securing the Claim of a party holding an Other Secured Claim is less than the amount of such Claim, the undersecured portion of such Claim will be treated for all purposes under this Plan as an Allowed General Unsecured Claim and will be classified as a General Unsecured Claim.

(d)     Separate Classification of Secured Claims.  Although Other Secured Claims against the Debtors have been placed in one category for purposes of nomenclature, each such Other Secured Claim, to the extent secured by different liens or security interests than other Other Secured Claims, shall be treated as if in a separate class from such other Other Secured Claims for purposes of voting on the Plan and receiving distributions under the Plan (to be designated as Other Secured Claims Class 3(A), Other Secured Claims Class 3(B), Other Secured Claims Class 3(C), etc., or similar convention).

4.04.   CLASS 4 - FIRST LIEN CREDIT AGREEMENT CLAIMS.

(a)     Impairment and Voting.  Class 4 is impaired by the Plan.  Each holder of a First Lien Credit Agreement Claim is entitled to vote to accept or reject the Plan.

(b)     Allowance.  First Lien Credit Agreement Claims shall be Allowed in the aggregate amount of $38,151,689.20, which is an amount equal to the Deficiency Claim.

(c)     Treatment.  Subject to the provisions of Section 4.04(d) hereof, pursuant to the 9019 Settlement, the holders of Allowed First Lien Credit Agreement Claims shall not receive any distributions on account of such claims.

(d)     Waiver and Re-distribution.  Notwithstanding the provisions of Section 4.04(c) hereof, pursuant to the 9019 Settlement: (a) if none of the Second Lien Lenders object to the Plan or the Disclosure Statement, and the Confirmation Date and the Effective Date occurs, the Deficiency Claim shall be waived for all purposes in the Chapter 11 Cases; and (b) if any of the Second Lien Lenders object to the Plan or the Disclosure Statement, the Deficiency Claim shall not be waived and any amounts recovered on account of the Deficiency Claim shall be added to the Unsecured Give-up Fund for the benefit of Eligible Unsecured Creditors and paid directly by the Debtors to the Unsecured Creditor Trustee; provided, however, in such event, the Second Lien Lenders shall not be entitled to participate in the Unsecured Give-up Fund.

4.05.   CLASS 5 - GENERAL UNSECURED CLAIMS.

(a)     Impairment and Voting.  Class 5 is impaired by the Plan.  Each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)     Treatment.  Each holder of an Allowed General Unsecured Claim as of the Distribution Record Date shall be entitled to receive, subject to the terms of the Plan and in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Class 5 Distribution.

4.06.   CLASS 6 - INSURANCE CLAIMS

(a)     Impairment and Voting.  Class 6 is impaired by the Plan.  Each holder of an Insurance Claim is entitled to vote to accept or reject the Plan.

(b)     Treatment.  Each holder of an Allowed Insurance Claim shall be entitled to receive, subject to the terms of the Plan and in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Insurance Claim, Cash, solely from the proceeds of the insurance policies issued to the Debtors, at such time as the Insurance Claim becomes an Allowed Insurance Claim.  In no event shall the holder of a Insurance Claim be entitled to recover on such Claim from any assets of the Debtors or the Reorganized Debtor other than from the insurance policies issued to the Debtors, and shall not otherwise have any recourse against the Debtors, Reorganized Debtor or any current or former employee of the Debtors.  Holders of Insurance Claims that did not timely file proofs of Claim or have their Insurance Claims deemed to be timely and Allowed Insurance Claims by Final Order of the Bankruptcy Court shall not be entitled to any recovery under the Plan or from any of the Debtors' insurers.

4.07.   CLASS 7 - EQUITY INTERESTS IN GWLS.

(a)     Impairment and Voting.  Class 7 is impaired by the Plan.  Each holder of an Equity Interest in GWLS is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

(b)     Distributions.  The holders of Equity Interests in GWLS shall not receive any distributions on account of such interests.  On the Effective Date, all Equity Interests in GWLS shall be cancelled.

# ARTICLE V

## IMPLEMENTATION OF THE PLAN

5.01.   Substantive Consolidation of the Debtors.

(a)      Entry of the Confirmation Order shall constitute the approval, pursuant to Bankruptcy Code sections 105(a), 541, 1123 and 1129, effective as of the Effective Date, of the substantive consolidation of the Debtors for all purposes, including voting, confirmation, and distribution.  On and after the Effective Date, (i) all assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) no distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor, (iii) no distributions shall be made under the Plan on account of any Equity Interest held by a Debtor in any other Debtor, and (iv) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor, and any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors.

(b)      The substantive consolidation effected pursuant to Section 5.01(a) of the Plan shall not affect, without limitation, (i) defenses to any Cause of Action or requirements for any third party to establish mutuality in order to assert a right of setoff, or (ii) distributions out of any insurance policies or proceeds of such policies.

(c)      The Disclosure Statement and this Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the substantive consolidation provided for in this Plan.  Unless an objection to consolidation is made in writing by any creditor affected by the Plan as herein provided on or before 4:00 p.m. Eastern Time, on the date that is ten (10) days before the Confirmation Hearing, or such other date as may be fixed by the Bankruptcy Court, the consolidation proposed by this Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.  In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, coincide with the Confirmation Hearing.

(d)      In the event the Bankruptcy Court determines that substantive consolidation of the Debtors is not appropriate, the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and the treatment of and distribution to the different Classes under the Plan on a Debtor-by-Debtor basis.

5.02.   Continued Corporate Existence.  Following the Effective Date, the Debtors shall be deemed substantively consolidated into one Reorganized Debtor, with all the powers available to such entity under applicable law in the jurisdiction in which the Reorganized Debtor is organized or otherwise formed and pursuant to its certificate of incorporation and by-laws or other organizational documents without prejudice to any right to terminate such existence under applicable law after the Effective Date.

5.03.   Assumed Liabilities.  From and after the Effective Date, none of the Assumed Liabilities shall any longer be obligations of the Debtors, their Estates or the Reorganized

Debtor, and the holder of any Claim with respect thereto shall have no recourse on account of such Claim, against the Debtors, the Reorganized Debtor or their property.

5.04. <u>Management of Reorganized Debtor's Assets</u>. After the Effective Date, all property of the Reorganized Debtor (including the Excluded Assets) shall be managed and administered by the Plan Administrator in a manner reasonably designed to maximize values. If the Plan Administrator in its discretion decides not to sell any non-Cash property or if such property cannot, in the Plan Administrator's judgment, be sold in a commercially reasonable manner prior to the Final Distribution Date, the Reorganized Debtor shall have the right to abandon or otherwise dispose of such property with the prior approval of the Bankruptcy Court. Absent willful misconduct or fraud in connection therewith, no party in interest shall have a cause of action against either the Plan Administrator, the Debtors or the Reorganized Debtor, or their respective directors, officers, employees, consultants, trustees or professionals arising from or related to the disposition of non-Cash property in accordance with this Section.

5.05. <u>Cancellation of Existing Securities and Agreements</u>. On the Effective Date, any document, agreement, or instrument evidencing any Claim or Equity Interest (including, but not limited to, the First Lien Credit Agreement, the Second Lien Credit Agreement, and the Mezzanine Facility) shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be discharged.

5.06. <u>Approval of Plan Documents</u>. The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder. Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions. On the Effective Date, the Reorganized Debtor shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

5.07. <u>Post-Confirmation Oversight Committee</u>. The Post-Confirmation Oversight Committee shall be comprised of up to three (3) members selected by the Committee on or prior to the Effective Date. The members of the Post-Confirmation Oversight Committee shall not be compensated for service on such Committee but shall be entitled to reimbursement of reasonable out-of-pocket expenses. Except as noted below, the role of the Post-Confirmation Oversight Committee shall be limited to consulting with the Plan Administrator on the following matters: (a) the timing and amount of interim distributions; (b) compliance with this Plan and the obligations hereunder; (c) employment, retention, or replacement of professionals to represent the Post-Confirmation Oversight Committee or the Plan Administrator with respect to their responsibilities; (d) objection to Claims as provided in this Plan, and prosecution of such objections; (e) compromise and settlement of any issue or dispute regarding the amount, validity, priority, treatment, or allowance of any Claim; (f) establishment, replenishment or release of reserves as provided in this Plan, as applicable; (g) exercise of such other powers as may be vested in the Plan Administrator pursuant to the Plan, the Plan Administrator Agreement or any other Plan Documents or order of the Bankruptcy Court; (h) taking all actions necessary or appropriate to enforce the Debtors' rights under the Sale Transaction Documents; (i) making all

determinations on behalf of the Debtors under the Purchase Agreement; (j) filing applicable tax returns for any of the Debtors or the Reorganized Debtor; and (k) liquidating any of the Excluded Assets. Any member of the Post-Confirmation Oversight Committee may be removed by the Bankruptcy Court for cause shown, after notice and a hearing. The Post-Confirmation Oversight Committee may retain legal counsel and financial advisors to advise it in the performance of its duties. In the event there are no members of the Post-Confirmation Oversight Committee, whether by death, resignation or removal, the Plan Administrator shall be free to act in its sole discretion subject to the requirements of this Plan and the Confirmation Order. The duties of the Post-Confirmation Oversight Committee shall also include services related to any applications for allowance of compensation or reimbursement of expenses of professional persons pending on the Effective Date or filed after the Effective Date (collectively, the "Filed Fee Applications") and the Post-Confirmation Oversight Committee shall have the right to be heard on all issues relating to final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date. The Reorganized Debtor shall pay (a) the reasonable expenses of the members of the Committee between the Confirmation Date and the Effective Date, and the reasonable expenses of the members of the Post-Confirmation Oversight Committee on and after the Effective Date (the "Post-Confirmation Date Committee Expenses"); and (b) on and after the Effective Date, the reasonable fees and expenses of the professional persons employed by the Post-Confirmation Oversight Committee in connection with its duties and responsibilities as set forth in this Plan (the "Post-Confirmation Oversight Committee Professional Fees"). The Post-Confirmation Date Committee Expenses and the Post-Confirmation Oversight Committee Professional Fees shall be paid within ten (10) Business Days after submission of a detailed invoice therefor to the Reorganized Debtor. If the Reorganized Debtor disputes the reasonableness of any such invoice, the Reorganized Debtor, the Post-Confirmation Oversight Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein. The Post-Confirmation Oversight Committee shall be dissolved and the members thereof shall be released and discharged of and from further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Chapter 11 Cases on the later of: (a) the Final Distribution Date; and (b) the date all services related to the Filed Fee Applications are completed, and the retention or employment of the Post-Confirmation Oversight Committee's professionals shall terminate. Service as a member of the Post-Confirmation Oversight Committee shall not preclude service on any trust advisory board or committee to be established, if any, with respect to the Unsecured Creditor Trust.

# ARTICLE VI

## PROVISIONS REGARDING VOTING
## AND DISTRIBUTIONS UNDER THE PLAN

6.01.   Voting of Claims. Each holder of a Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article IV of the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

6.02.   Nonconsensual Confirmation. If any impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in Bankruptcy Code section 1126(c), the Proponents shall have the right to amend the Plan in accordance with Section 14.07 hereof or to ask the Bankruptcy Court to confirm the Plan under Bankruptcy Code section 1129(b), or both. With respect to impaired Classes of Claims and Equity Interests that are deemed to reject the Plan, the Proponents shall request that the Bankruptcy Court confirm the Plan pursuant to Bankruptcy Code section 1129(b).

6.03.   Disbursing Agent. Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent.

6.04.   Distributions of Cash. Any payment of Cash made by the Disbursing Agent pursuant to the Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or wire transfer.

6.05.   Timing of Distributions. In the event that any payment, distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Any requirement under the Plan that the Reorganized Debtor or Disbursing Agent make a payment or distribution on a date shall mean that such party is required to commence the process of making a payment or distribution on such date.

6.06.   Holders as of the Distribution Record Date. As of the close of business on the Distribution Record Date: (i) the claims register maintained in the Chapter 11 Cases shall be closed; and (ii) any transfer of any Claim (including any First Lien Credit Agreement Claim, Second Lien Credit Agreement Claim, or Mezzanine Facility Claim) or any interest therein shall be prohibited. Neither the Debtors nor the Reorganized Debtor shall have any obligation to recognize any transfer of any Claim occurring after 5:00 p.m. (New York time) on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under this Plan with only those holders of record as of 5:00 p.m. (New York time) on the Distribution Record Date.

6.07.   Distributions to Address of Record. Subject to Bankruptcy Rule 9010, and except as set forth in this Section 6.07 of the Plan, all distributions under the Plan to holders of Allowed

Claims shall be made to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtors or, on and after the Effective Date, the Reorganized Debtor, have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules. In the event that any distribution to any such holder is returned as undeliverable, no distribution to such holder shall be made unless and until the appropriate Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution shall be made to such holder without interest; provided, however, that, at the later of the expiration of one (1) year from the Effective Date and the date a Claim becomes an Allowed Claim, such distributions shall be deemed unclaimed property and shall revest in the Reorganized Debtor and be distributed to other holders of Allowed Claims, in accordance with the Plan or otherwise ordered by the Bankruptcy Court, as set forth in Section 6.09 of the Plan.

6.08. <u>Minimum Distributions</u>. No payment of Cash of less than ten dollars ($10) shall be made by the Reorganized Debtor to any holder of an Allowed Claim unless a request therefor is made in writing to the Reorganized Debtor. If no request is made as provided in the preceding sentence within ninety (90) days of the later of the Effective Date or the date such Claim is Allowed, all such distributions shall be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

6.09. <u>Unclaimed Distributions</u>. All distributions to holders of Allowed Claims under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under Bankruptcy Code section 347(b), and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred. All such unclaimed property shall revest in the Reorganized Debtor and be distributed to other holders of Allowed Claims in accordance with the Plan or otherwise ordered by the Bankruptcy Court.

6.10. <u>Setoffs</u>. The Debtors and Reorganized Debtor may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any Causes of Action of any nature whatsoever that the Debtor or Reorganized Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtor of any such Causes of Action that the Debtors or Reorganized Debtor may have against the holder of such Claim.

6.11. <u>Allocation of Plan Distributions Between Principal and Interest</u>. To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

6.12. <u>Estimation of Claims</u>. For purposes of calculating and making distributions under the Plan, the Debtors and the Reorganized Debtor shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Debtors and the Reorganized Debtor also shall be entitled to seek one or

more estimation orders from the Bankruptcy Court for such purposes, which requests may be joined with objections to the Claims that are subject to any such request. Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought. Notwithstanding the foregoing: (i) neither the Debtors nor the Reorganized Debtor shall be obligated to physically segregate and maintain separate accounts for reserves; and (ii) unless otherwise ordered by the Bankruptcy Court, no reserves shall be required to be established or maintained with respect to Claims or Administrative Expense Claims filed after the applicable Bar Date. Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate.

6.13. <u>No Recourse</u>. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtors, the Reorganized Debtor, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code, nor shall it modify or limit the ability of claimants (if any) to seek disgorgement to remedy any unequal distribution from parties other than those released under this section. THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

6.14. <u>Intercompany Claims</u>. Intercompany Claims shall be deemed resolved and eliminated as a result of the terms embodied in this Plan (including the relevant distributions being made to the holders of Claims in the Classes under the Plan and the substantive consolidation of the Debtors). Holders of Intercompany Claims shall not be entitled to vote on the Plan or receive any distribution under the Plan on account thereof.

6.15. <u>Satisfaction of Claims and Equity Interests</u>. Unless otherwise provided in the Plan or the Confirmation Order, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

**ARTICLE VII**

**PLAN ADMINISTRATOR**

7.01. <u>General</u>.

    (a)    <u>Appointment; Duties</u>. Not less than ten (10) days prior to the commencement of the Confirmation Hearing and subject to Bankruptcy Court approval in connection with confirmation of the Plan, the Committee shall designate the Person who initially will serve as the Plan Administrator; <u>provided</u>, <u>however</u>, that: (i) the Committee shall have the

right at any time prior to the Effective Date to remove the Plan Administrator without cause; and (ii) the Plan Administrator shall be subject to removal by the Bankruptcy Court for cause shown at any time. On or after the Confirmation Date but prior to the Effective Date, the Plan Administrator shall assume all of its obligations, powers and authority under the Plan to: (i) establish reserves as set forth in Section 7.02; and (ii) exercise such other power and authority as may be set forth in the Confirmation Order (collectively, the "Pre-Effective Date PA Duties"). On the Effective Date, the Plan Administrator shall assume all of its other obligations, powers and authority under the Plan.

(b)     Qualifications; Plan Administrator Agreement.

(i)     Plan Administrator as Fiduciary. The Plan Administrator shall be a fiduciary of each of the Debtors and the Debtors' estates, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan and under the agreement to be entered into by the Plan Administrator and the Committee or its successor, the Post-Confirmation Oversight Committee (the "Plan Administrator Agreement"), and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administrator Agreement.

(ii)     Provisions of Agreement and Order. The Plan Administrator Agreement and the Confirmation Order shall provide that: ((i) the Plan Administrator (x) prior to the Effective Date, shall be independent of the Debtors and shall report to the Committee or its successor, the Post-Confirmation Oversight Committee, with respect to the Plan Administrator's obligations under the Plan; and (y) shall be a fiduciary of each of the Estates; (ii) neither the Debtors (except as expressly set forth in the Plan Administrator Agreement) nor their respective boards of directors, managements, employees and professionals shall have any liability for any action taken or omitted to be taken by the Plan Administrator in performing the Pre-Effective Date PA Duties and all Persons are enjoined from pursuing any Claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken); (iii) any determinations made by the Plan Administrator with respect to the establishment of reserves under this Plan shall not be binding on any party if the Effective Date fails to occur; and (iv) if the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, the Plan Administrator position shall thereafter be dissolved.

7.02.     Powers and Duties.

(a)     General Powers and Duties.

From and after the Effective Date, pursuant to the terms and provisions of this Plan, the Plan Administrator shall be empowered and directed to: (i) take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and to perform the duties assigned to the Plan Administrator under this Plan or the Plan Administrator Agreement; (ii) comply with this Plan and the obligations hereunder; (iii) employ, retain, or replace professionals to represent it with respect to its responsibilities; (iv) object to Claims as provided in this Plan, and prosecute such objections; (v) compromise and settle any

issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim; (vi) establish, replenish or release reserves as provided in this Plan, as applicable; (vii) exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, the Plan Administrator Agreement or any other Plan Documents or order of the Bankruptcy Court or otherwise act on behalf of and for the Reorganized Debtor from and after the Effective Date; (viii) take all actions necessary or appropriate to enforce the Debtors' rights under the Sale Transaction Documents; (ix) make all determinations on behalf of the Debtors under the Purchase Agreement; (x) file applicable tax returns for any of the Debtors or the Reorganized Debtor; and (xi) liquidate any of the Excluded Assets. The Plan Administrator may retain legal counsel and financial advisors to advise it in the performance of its duties. The Reorganized Debtor shall pay the reasonable fees and expenses of the professional persons employed by the Plan Administrator (the "Plan Administrator Professional Fees") in connection with its duties and responsibilities as set forth in this Plan. The Plan Administrator Professional Fees shall be paid within ten (10) Business Days after submission of a detailed invoice therefor to the Reorganized Debtor. If the Reorganized Debtor disputes the reasonableness of any such invoice, the Reorganized Debtor or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

(b)     Distributions.

Pursuant to the terms and provisions of the Plan, the Plan Administrator shall make the required Distributions specified under the Plan, on the Initial Distribution Date, Interim Distribution Date, or Final Distribution Date, as the case may be, under the Plan.

(c)     Disputed Reserves.

On the Effective Date, the Debtors shall transfer to the Plan Administrator all assets held in each of the reserves being held by Debtors, including reserves for Disputed Claims, and the Plan Administrator shall establish reserves, holdbacks and funds required by the Plan.

(d)     Reorganized Debtor Stock.

On the Effective Date, the Reorganized Debtor shall issue a single share of stock to the Plan Administrator.

## ARTICLE VIII

## [INTENTIONALLY DELETED]

## ARTICLE IX

## PROCEDURES FOR TREATING DISPUTED CLAIMS

9.01.     Objections to Administrative Expense Claims and Claims. Following the Effective Date, only the Reorganized Debtor shall be entitled to object to Administrative

Expense Claims and Claims. Any objections to Administrative Expense Claims and Claims shall be filed and served on or before the later of (i) ninety (90) days after the Effective Date, and (ii) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, which later date may be fixed before or after the date specified in clause (i) above. No objection shall be required with respect to a proof of Claim or proof of Administrative Expense Claim filed after the applicable Bar Date, and any and all such Claims and Administrative Expense Claims shall be deemed disallowed unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

9.02.   Amendments to Claims. After the Confirmation Date, a proof of Claim or Administrative Expense Claim may not be amended without the authorization of the Bankruptcy Court. Any new proof of Claim or Administrative Expense Claim amended after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtors or the Reorganized Debtor, unless the holder of the Claim or Administrative Expense Claim has obtained prior Bankruptcy Court authorization to file the amendment.

9.03.   No Distributions Pending Allowance. Notwithstanding any other provision hereof, if any portion of a Claim or Administrative Expense Claim is Disputed, no payment or distribution provided hereunder shall be required to be made on account of such Claim or Administrative Expense Claim unless and until such Disputed Claim or Administrative Expense Claim becomes Allowed in its entirety.

9.04.   Distributions Relating to Insurance Claims. Distributions under the Plan to each holder of an Insurance Claim shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Section 9.04 shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any entity may hold against any other entity, including, without limitation, insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers. To the extent an Insurance Claim, in whole or in part, becomes liquidated: (i) the insured portion shall be paid by the applicable insurer; and (ii) to the extent any portion of such liquidated Insurance Claim is not covered by any of the Debtors' insurance policies, such uninsured portion shall be deemed, to the extent applicable, a Class 6 Claim and shall be treated in accordance with Section 4.06 of the Plan. Nothing contained in this Section 9.04 shall constitute or be deemed a waiver of any defense, right, or Cause of Action that the Debtors may have against any Person in connection with or arising out of any Insurance Claim.

9.05.   Resolution of Disputed Claims. On and after the Effective Date, the Reorganized Debtor and the Plan Administrator shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims without approval of the Bankruptcy Court; provided, however, the Reorganized Debtor and the Plan Administrator shall not be permitted to compromise, settle or otherwise resolve any objections to Disputed Claims absent approval by the Post-Confirmation Oversight Committee pursuant to procedures to be agreed upon between the Post-Confirmation Oversight Committee and the Plan Administrator. To the extent that there is no Post-Confirmation Oversight Committee, the Reorganized Debtor or the Plan Administrator shall file with the Court a quarterly report regarding claims resolved over a certain threshold amount to be agreed upon between the Reorganized Debtors and the

Committee. The Reorganized Debtor shall be responsible for paying the reasonable fees and expenses (including reasonable attorneys' fees and costs) that are incurred by the Debtors, the Reorganized Debtor, and the Plan Administrator and associated with the claims resolution process.

9.06. <u>Resolution of Disputed Insurance Claims</u>. All Insurance Claims not previously Allowed shall be considered to be Disputed Claims as of the Effective Date such that no objection to an Insurance Claim is required to be filed. The Reorganized Debtor shall have the right to the exclusion of all others to make, file, and prosecute objections to Insurance Claims in a forum of appropriate jurisdiction. All Insurance Claims shall be litigated to an order of a court of competent jurisdiction over such claim except to the extent that the Reorganized Debtor and the holder of the Disputed Insurance Claim compromise, settle or otherwise resolve the respective Insurance Claim or agree to another method of claim resolution such as mediation or arbitration, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further order of the Bankruptcy Court or any other court; <u>provided</u>, <u>however</u>, that the Reorganized Debtor shall not be permitted to compromise, settle, or otherwise resolve any objections to Disputed Claims absent approval by the Post-Confirmation Oversight Committee pursuant to procedures to be agreed upon between the Post-Confirmation Oversight Committee and the Plan Administrator.

**ARTICLE X**

**<u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

10.01. <u>Rejection or Assumption and Retention or Assignment</u>.

(a) <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code:

(i) all executory contracts and unexpired leases of the Debtors shall be deemed to be rejected by the applicable Debtor as of the Effective Date, except for any executory contract or unexpired lease: (a) that previously has been assumed and/or assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; (b) as to which a motion for approval of the assumption and/or assignment of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (c) that is specifically designated as a contract or lease to be assumed and/or assigned or retained on Schedule 10.01(a), which schedule shall be contained in the Plan Supplement and shall list corresponding Cure Amounts;

(ii) notwithstanding anything otherwise herein to the contrary, the Debtors reserve the right, on or prior to the Effective Date, to amend Schedule 10.01(a) to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, as applicable, rejected, assumed and/or assigned or retained. The Debtors shall provide notice of any amendments to Schedule 10.01(a) to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on Schedule 10.01(a) shall not constitute an admission by the

Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

(b) **Approval of Assumptions, Retentions and Rejections by Confirmation Order.** Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections, retentions, assumptions and/or assignments contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to Section 10.01(a) shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. The Debtors reserve the right to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease.

10.02. **Cure of Defaults.**

(a) **Generally.** Except as may otherwise be agreed to by the Debtors or Reorganized Debtor, as the case may be, and the non-Debtor party to the contract or lease, within thirty (30) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with Bankruptcy Code section 365(b). Subject to the last sentence of Section 10.02(b) of the Plan, all disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

(b) **Notice of Proposed Cure.** The Debtors shall, prior to the conclusion of the Confirmation Hearing, file and serve on parties to executory contracts and unexpired leases that may be assumed pursuant to Section 10.01 of the Plan a notice (the "Cure Notice") listing the proposed Cure Amount to be paid in connection with the executory contracts and unexpired leases that may be Assumed, retained, assumed and/or assigned pursuant to Section 10.01 of the Plan. The non-Debtor parties to such contracts and leases shall have until fifteen (15) days following service of the Cure Notice to object in writing to the proposed cure and to propose an alternative cure. In the event that no objection is timely filed, the applicable party shall be deemed to have consented to the cure proposed by the Debtors (including amounts of compensation for actual pecuniary loss) and shall be forever enjoined and barred from seeking from the Debtors, and Reorganized Debtor any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code. If an objection is timely filed with respect to the Cure Amount proposed by the Debtors for an executory contract or unexpired lease, the Bankruptcy Court shall hold a hearing to determine the amount of any disputed cure amount not settled by the parties. Notwithstanding anything otherwise to the contrary, at all times through the date that is thirty (30) days after the entry of a Final Order resolving and fixing the amount of a disputed cure amount, whether such date is before or after the Effective Date, the Debtors and Reorganized Debtor shall be authorized to reject such executory contract or unexpired lease by notice to the non-debtor party to such executory contract or unexpired lease.

10.03. **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.** Claims arising out of the rejection of an

executory contract or unexpired lease pursuant to Section 10.01 of the Plan must be filed with the Bankruptcy Court and served upon the Debtors or, on and after the Effective Date, the Reorganized Debtor, no later than thirty (30) days after the later of: (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease; (ii) notice of occurrence of the Effective Date; and (iii) notice of an amendment to Schedule 10.01(a) amending any such Claim. All such Claims not filed within such time will be forever barred from assertion against the Debtors and their estates, and the Reorganized Debtor.

## ARTICLE XI

## EFFECT OF CONFIRMATION

11.01. <u>Binding Effect</u>. From and after the Confirmation Date, but subject to the occurrence of the Effective Date, this Plan shall be binding and inure to the benefit of the Debtors, all present and former holders of Claims and Equity Interests, and their respective assigns, including the Reorganized Debtor.

11.02. <u>Vesting of Assets</u>. Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Excluded Assets shall revest in the applicable Reorganized Debtor, in each case free and clear of all Claims, Liens, encumbrances, charges, and other interests, except: (i) as otherwise provided herein or in the Confirmation Order; and (ii) the Debtors may provide in the Confirmation Order that such vesting and revesting shall, without any action by any party, be deemed to vest in trust for the benefit of those entitled to distributions pursuant to the Plan. From and after the Effective Date, the Reorganized Debtor shall continue to operate to implement this Plan and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein. Without limiting the foregoing, pursuant to section 1123(b)(3) of the Bankruptcy Code, except for: (i) any Causes of Action expressly waived by the Debtors pursuant to the terms of this Plan; and (ii) any Causes of Action included in the Purchased Assets, the Reorganized Debtor shall retain and shall have the exclusive right, in its discretion to enforce against any Person any and all Causes of Action of the Debtors.

11.03. <u>Discharge of the Debtors and of Claims and Termination of Equity Interests</u>. Upon the Effective Date and in consideration of the rights afforded in this Plan and the payments and distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim against or Equity Interest in a Debtor and any Affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors of and from any and all Liens, Claims, Equity Interests, encumbrances, liabilities and rights that arose prior to the Effective Date of any kind, nature, or description whatsoever, including any accrued interest, against or in any of the Debtors (collectively, the "<u>Discharged Obligations</u>"). Except as otherwise provided herein, upon the Effective Date, all such holders of Liens, Claims, liabilities, encumbrances and Equity Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any Discharged Obligation against any of the Debtors or Reorganized Debtor, or any of their respective affiliates,

or against any of their assets or properties, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

11.04. **Term of Pre-Confirmation Injunctions or Stays.** Unless otherwise provided in this Plan, the Confirmation Order, or a separate order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, (i) shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order, and (ii) with respect to all proceeds of the Sale Transactions and Excluded Assets, shall remain in effect until, and for purposes of enjoining any action interfering with, the final distribution of such proceeds pursuant to the terms of this Plan.

11.05. **Injunction Against Interference with Plan.** Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

11.06. **Injunction.** Except as otherwise expressly provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Liens, Claims, Liabilities or encumbrances against or Equity Interests in, any or all of the Debtors, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, with respect to any such Liens, Claims, liabilities or encumbrances or Equity Interests, as of the Confirmation Date but subject to the occurrence of the Effective Date, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtor, or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (b) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Reorganized Debtor, or the Purchased Assets or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtor, or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; (e) taking any actions to interfere with the implementation or consummation of this Plan or the Sale Transactions; and (f) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan, such as commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights arising under and consistent with the terms of this Plan.

11.07. *Releases.*

(a)      *Releases by the Debtors.*  **Except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, the Debtors and Reorganized Debtor, in their individual capacities and as debtors in possession, shall be deemed to forever release and waive all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights of the Debtors or the Reorganized Debtor to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder or the Sale Transaction Documents) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, which are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or after the Petition Date (or the date of appointment, engagement or qualification) and to and including the Effective Date in any way relating to the Debtors, the Reorganized Debtor, the Chapter 11 Cases, this Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors, or the Reorganized Debtor, whether directly, indirectly, derivatively or in any representative or any other capacity, against the following Persons in their respective capacities as such (the "Released Parties"):  (i) the current officers and employees of the Debtors, except for any claim for money borrowed from or owed to the Debtors or its subsidiaries by any such directors, officers or employees; (ii) any current and former directors and officers of the Debtors, in each case who were first appointed after the Petition Date; (iii) the Debtors' professionals, and their respective affiliates and current and former officers, partners, directors, employees, agents, members, shareholders, advisors (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons); (iv) the DIP Agent and the DIP Lenders, and professionals of the foregoing; and (v) the Committee and its current or former members, and their respective affiliates and current and former officers, partners, directors, employees, agents, shareholders, advisors (including any attorneys, financial advisors, and other professionals retained by such Persons); *provided, however, that in no event shall anything in this Section be construed as a release of any Person's fraud or willful misconduct.***

(b)      *Releases by Holders of Claims and Equity Interests.*  **Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims and Equity Interests, in consideration for the obligations of the Debtors and the Reorganized Debtor under this Plan, the Sale Transaction Documents, and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan and the Sale Transaction Documents, and each entity (other than the Debtors) that has held, holds or may hold a Claim or Equity Interest, as applicable, will be deemed to have consented to this Plan for all purposes and the restructuring embodied herein and will be deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan), including as a result of this Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act**

or omission, transaction, event or other occurrence taking place on or after the Petition Date through and including the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, this Plan or the Disclosure Statement against the following Persons in their respective capacities as such (the "*Third Party Releasees*"): (i) the current directors, officers and employees of the Debtors; (ii) any former directors and officers of the Debtors who were first appointed after the Petition Date; (iii) the Debtors 'professionals, and their respective affiliates and current and former officers, partners, directors, employees, agents, members, shareholders, advisors (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons); (iv) the DIP Agent and the DIP Lenders, and professionals of the foregoing; and (v) the Committee and its current or former members, and their respective affiliates and current and former officers, partners, directors, employees, agents, shareholders, advisors (including any attorneys, financial advisors, and other professionals retained by such Persons). Notwithstanding the foregoing, in no event shall anything in this Section be construed as a release of any Person's (other than a Debtor's) fraud or willful misconduct.*

(c)     *Notwithstanding anything to the contrary, (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 11.07 shall not release any non-Debtor entity from any liability arising under: (x) the Internal Revenue Code of 1986, as amended, or any state, city or municipal tax code; (y) the environmental laws of the United States or any state, city or municipality; or (z) any criminal laws of the United States or any state, city or municipality; and (ii) the releases provided in this Section 11.07 shall not release any non-Debtor entity from any liability arising under the securities laws of the United States. Nothing in the Plan or the Confirmation Order approving the Plan shall release, discharge, enjoin, or preclude the enforcement of any environmental liability arising post-Effective Date or arising from an event that occurred prior to the Effective Date where the liability continues post-Effective Date to a governmental unit to which any entity would be subject as the owner or operator of property after the Effective Date.*

(d)     *Notwithstanding anything otherwise to the contrary, no provision of this Plan or of the Confirmation Order, including any release or exculpation provision, shall modify, release or otherwise limit the liability of any Person not specifically released hereunder, including any Person that is a co-obligor or joint tortfeasor of a Released Party or Third Party Releasee, that otherwise is liable under theories of vicarious or other derivative liability.*

11.08.  Exculpation and Limitation of Liability.  None of the Purchaser (in its capacity as a purchaser under the Purchase Agreement), the Debtors, the Reorganized Debtor, the DIP Agent (in its capacity as such), the DIP Lenders (in their capacity as such), the Committee, the Post-Confirmation Oversight Committee, or any of their respective current or former members, partners, officers, directors, employees, advisors, professionals, affiliates, or agents and advisors of any of the foregoing (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons, but solely in their capacities as such) shall have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the negotiation and execution of this Plan, the Disclosure Statement, the Purchase Agreement and Sale Transactions, the

solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, the Purchase Agreement, the Sale Transactions and the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of this Plan except fraud, willful misconduct or gross negligence as determined by a Final Order. Nothing in this Section 11.08 shall: (i) be construed as a release of any entity's fraud, gross negligence or willful misconduct with respect to matters set forth in this Section 11.08; (ii) limit the liability of attorneys for the Debtors, the Reorganized Debtor, the Committee, or the Post-Confirmation Oversight Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility; or (iii) limit or abrogate the obligations of the Debtors or the Purchaser and any of their respective affiliates to one another under the Sale Transaction Documents or the Purchase Agreement.

11.09. <u>Injunction Related to Releases and Exculpation</u>. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims (except for Assumed Liabilities), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including the Claims (except for Assumed Liabilities), obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in Sections 11.07 and 11.08 of this Plan.

11.10. <u>Release of Liens and Encumbrances</u>.

(a)    Each Lien or encumbrance on the Debtors' assets, other than a permitted encumbrance (excluding a permitted encumbrance securing a financial obligation that is not an Assumed Liability), including Liens or encumbrances securing: (w) any DIP Loan Agreement Claim, Secured Tax Claim or Other Secured Claim; (x) any Claim that is purportedly secured or (y) any judgment, personal property or ad valorem tax, or other tax of any kind or character, mechanic's or similar lien Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, regardless of whether such Claim has been scheduled or proof of such Claim has been filed:

(i)    if such Lien or encumbrance is on an Excluded Asset and secures a Secured Tax Claim or Other Secured Claim, such Lien or encumbrance shall upon payment of the consideration set forth in Section 4.02 or 4.03, as the case may be, automatically, and without further action by the Debtors or the Reorganized Debtor, be deemed released;

(ii)    in all other cases, such Lien or encumbrance shall automatically, and without further action by the Debtors or the Reorganized Debtor, be deemed released immediately upon the occurrence of the Effective Date; <u>provided, however</u>, that in the case of Purchased Assets, any Lien or encumbrance in favor of the holder of a DIP Loan Agreement Claim, Secured Tax Claim or Other Secured Claim shall automatically attach (in the same order of priority as existed with respect to such Claim and/or Lien, and subject to any rights, Claims or defenses the Debtors or Reorganized Debtor may have with respect to such Claim and/or Lien) to the net

proceeds of the sale of the property that secured such Claim until such time as such DIP Loan Agreement Claim, Secured Tax Claim or Other Secured Claim is satisfied as set forth in Section 2.01, 4.02 or 4.03, as applicable, at which time such Claim and/or Lien or encumbrance shall automatically, and without further action by the Debtors or Reorganized Debtor, be deemed released; and

        (iii)    the holder of any such Lien or encumbrance shall execute such documents and instruments as the Plan Administrator, the Reorganized Debtor, or, with respect to Purchased Assets, the Purchaser, as the case may be, require to evidence such Claim holder's release of such property or Lien or encumbrance, and if such holder refuses to execute appropriate documents or instruments, the Debtors, the Plan Administrator, or the Reorganized Debtor (as applicable) or Buyer may, in their discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any Claim holder's rights in such property; and

        (iv)    on the Effective Date, except as expressly provided in the Plan, all right, title and interest in Estate property subject to a Lien or an encumbrance immediately prior to the Effective Date shall revert or be transferred to the respective Reorganized Debtor.

## ARTICLE XII

## CONDITIONS PRECEDENT

    12.01.  <u>Conditions to Confirmation</u>.  The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 12.03 of this Plan:

        (a)    the Bankruptcy Court shall have approved the Disclosure Statement with respect to this Plan in an order in form and substance reasonably acceptable to the Debtors and the Committee;

        (b)    the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors and the Committee;

        (c)    in each case subject to the occurrence of the Effective Date, to the extent necessary or appropriate, the Plan Documents to be entered into (rather than assumed) by the Reorganized Debtor shall have been entered and delivered, all actions, documents, and agreements necessary to implement the Plan shall have been effected or executed and the Debtors shall have received all material authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are reasonably necessary to implement the Plan and that are required by law, regulation, or order.

    12.02.  <u>Effectiveness</u>.  The Plan shall not become effective unless and until: (i) the Confirmation Order shall have become final and non-appealable; and (ii) the Plan Documents shall have been executed and become effective.

12.03. <u>Waiver of Conditions</u>. The Proponents, in their sole discretion and to the extent not prohibited by applicable law, may waive one or more of the conditions precedent: (i) to effectiveness of the Plan set forth in Section 12.02 hereof in whole or part, upon five Business Days' notice to the Bankruptcy Court without a hearing; or (ii) to confirmation of the Plan set forth in Section 12.01 hereof prior to the Confirmation Date without any hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Proponents in their sole discretion regardless of the circumstances giving rise to the failure of such conditions to be satisfied (including any action or inaction by the Debtors in their sole discretion). The failure of the Proponents in their sole discretion to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

12.04. <u>Withdrawal of Plan</u>.

(a) <u>Right to Revoke or Withdraw</u>. The Debtors and the Committee reserve the right to mutually revoke or withdraw the Plan at any time prior to the Effective Date.

(b) <u>Effect of Withdrawal, Revocation or Non-Consummation</u>. If the Debtors and the Committee mutually revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts, unexpired leases, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interest in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

12.05. <u>Waiver of Rule 3020(e) Stay</u>. Pursuant to Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective upon its entry and shall not be subject to the stay provided in Bankruptcy Rule 3020(e).

## ARTICLE XIII

## RETENTION OF JURISDICTION

13.01. <u>Scope of Bankruptcy Court Jurisdiction</u>. The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine pending applications for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom or from the assumption, assumption and assignment or rejection of executory contracts or unexpired leases pursuant to this Plan;

(b)     To hear and determine any and all adversary proceedings, applications, and contested matters, and to order appropriate relief in connection therewith (including issuance and/or enforcement of releases);

(c)     To hear and determine any objection to Administrative Expense Claims, Claims or Equity Interests;

(d)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)     To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)     To consider any amendments to, or modifications of, the Plan and the Plan Supplement, and any dispute or controversy relating to execution, delivery or compliance with any document included in the Plan Supplement, and to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(g)     To issue such orders in aid of execution and consummation of any Sale Transaction to be consummated in connection with the Plan;

(h)     To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(j)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, any Sale Transaction to be consummated in accordance herewith, the Confirmation Order, or any other order of the Bankruptcy Court;

(k)     To recover all assets of the Debtors and property of the Debtors and Reorganized Debtor, wherever located;

(l)     To hear and determine matters concerning state, local, and federal taxes, including as provided by sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(m)     To resolve any Disputed Claims or Equity Interests;

(n)     To determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(o)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(p)    To enter a final decree closing the Chapter 11 Cases; provided, however, with respect to a governmental unit's exercise of its police or regulatory powers other than the enforcement of a money judgment, the jurisdiction of any other tribunal shall not be reduced or impaired from that as set forth in any applicable, valid statutory grant of jurisdiction.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

14.01.  Effectuating Documents and Further Transactions.  Each of the Debtors and Reorganized Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to this Plan.

14.02.  Corporate Action.  On the Effective Date, all matters provided for under this Plan that would otherwise require approval of the stockholders, directors, members, managers or partners of one or more of the Debtors or Reorganized Debtor, including (i) the effectiveness of the certificates of incorporation and by-laws of the Reorganized Debtor, (ii) the election or appointment, as the case may be, of directors and officers of the Reorganized Debtor, and (iii) qualification of the Reorganized Debtor as a foreign corporation wherever the conduct of business by the Company requires such qualification, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to Section 303 of the Delaware General Corporation Law or other applicable law of the states in which the Debtors and the Reorganized Debtor are organized, without any requirement of further action by the stockholders, directors, members, managers, or partners of the Debtors or Reorganized Debtor.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtor shall, if required, file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) incorporated, in accordance with the applicable general corporation law of each such state.

14.03.  Exemption from Transfer Taxes.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan (including the transfer of the Purchased Assets in connection with any Sale Transaction), including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall constitute a "transfer under a plan" and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under this Plan and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with this Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

14.04. Payment of Statutory Fees. On the Effective Date, and thereafter as may be required, the Debtors and/or Reorganized Debtor, as applicable, shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code through the entry of a final decree closing the applicable Debtor's cases.

14.05. Post-Effective Date Fees and Expenses. From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional Persons thereafter incurred by the Reorganized Debtor, including those fees and expenses incurred in connection with the implementation and consummation of this Plan.

14.06. Plan Supplement. Plan Supplement shall contain Schedule 10.01(a) referred to in Section 10.01 of the Plan, the Plan Administrator Agreement and any other appropriate documents, and shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the Voting Deadline; provided, however, that the Proponents may amend: (i) Schedule 10.01(a) through and including the Confirmation Date; and (ii) each of the other documents contained in the Plan Supplement through and including the Effective Date that is not inconsistent with the Plan. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours, www.deb.uscourts.gov (a PACER password is required) or www.kccllc.net/greatwide.

14.07. Amendment or Modification of this Plan. Alterations, amendments, or modifications of or to the Plan (including to provide for treatment different than that set forth herein with respect to any class of Claim or Equity Interest, including establishment of subclasses of Classes of Claims or Equity Interests to the extent required if so elected by the Debtors or if the deemed consolidation contemplated by Article V of this Plan is not approved, the unimpairment of Classes that are impaired hereunder, and the impairment of Classes that are unimpaired hereunder) may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Proponents shall have complied with section 1125 of the Bankruptcy Code. Subject to any applicable restrictions or requirements on the Debtors under the Purchase Agreement, this Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

14.08. Revocation or Withdrawal of this Plan. The Debtors and the Committee mutually reserve the right to revoke or withdraw the Plan prior to the Effective Date in whole or in part. If the Debtors and the Committee revoke or withdraw the Plan prior to the Effective Date, then except as set forth in Section 14.08 of the Plan, the Plan shall be deemed null and void. In the event of any such waiver or revocation, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in

any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

14.09. <u>Confirmation Order</u>. The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtors during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

14.10. <u>Severability</u>. If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.11. <u>Expedited Tax Determination</u>. The Reorganized Debtor may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, such Debtors or Reorganized Debtor for all taxable periods beginning on or before the Effective Date.

14.12. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto or in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to any contrary result otherwise required under applicable choice or conflict of law rules.

14.13. <u>Binding Effect</u>. The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including the Reorganized Debtor.

14.14. <u>Exhibits/Schedules</u>. All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

14.15. <u>Dissolution of the Committee</u>. The functions of the Committee shall terminate on the later of: (i) the Effective Date; and (ii) the conclusion of any appeals with respect to the Confirmation Order (but such functions shall relate solely to services performed related to such appeal), and the Committee shall be deemed dissolved as of such date; <u>provided</u>, <u>however</u>, that following the Effective Date, the attorneys and financial advisors to the Committee shall be entitled to assert any claims for compensation for services rendered or reimbursement for

expenses incurred after the Effective Date in connection with the pursuit of their own Fee Claims.

14.16. <u>Notices</u>. All notices, requests, and demands to or upon the Debtors, the Reorganized Debtor, the Committee, or the Plan Administrator to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| | |
|---|---|
| **YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Robert S. Brady<br>Matthew B. Lunn<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 576-3312<br><br>*Co-Counsel for the Debtors* | **WILLKIE FARR & GALLAGHER LLP**<br>Paul V. Shalhoub<br>Robin Spigel<br>787 Seventh Avenue<br>New York, New York 10019-6099<br>Telephone: (212) 728-8000<br>Facsimile: (212) 728-8111<br><br>*Co-Counsel for the Debtors* |
| GW LIMITED 51, Inc., <u>et al.</u><br>c/o Loughlin Meghji + Company<br>Attn: James J. Loughlin, Jr.<br>220 West 42nd Street, 9th Floor<br>New York, New York 10036 | |
| **PEPPER HAMILTON, LLP**<br>David B. Stratton<br>Hercules Plaza<br>1313 Market Street, Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899<br>Telephone: (302) 777-6566<br>Fax: (302) 421-8390<br><br>*Co-Counsel for the Committee* | **OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.**<br>Jenette A. Barrow-Bosshart<br>Melanie L. Cyganowski<br>Jessica M. Ward<br>230 Park Avenue<br>New York, New York 10169<br>Telephone: (212) 661-9100<br>Facsimile: (212) 682-6104<br><br>*Co-Counsel for the Committee* |

Dated: Wilmington, Delaware
August 19, 2009

Respectfully submitted,

**GW Limited 51, Inc., f/k/a GWLS Holdings, Inc., et al.**

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title:   Chief Restructuring Officer

On behalf of the Debtors

**The Official Committee of Unsecured Creditors of GW Limited 51, Inc., f/k/a GWLS Holdings, Inc., et al.**
By: _____
Name:
Title:

Dated: Wilmington, Delaware
     August 19, 2009

Respectfully submitted,

**GW Limited 51, Inc., f/k/a GWLS Holdings,**
**Inc., et al.**
By: _____
Name: James J. Loughlin, Jr.
Title:   Chief Restructuring Officer

On behalf of the Debtors

**The Official Committee of Unsecured Creditors of GW**
**Limited 51, Inc., f/k/a GWLS Holdings, Inc., et al., By**
**its Chairperson**
**Citadel Investment Group LLC**
By:   *Toby Buchanan* _____
Name: Toby Buchanan
Title:   *Assistant General Counsel*

## EXHIBIT A

GW Limited 1, Inc., f/k/a Greatwide Logistics Services, Inc.

GW Limited 2, L.P., f/k/a Transport Industries Holdings, L.P.

GW Limited 3, LLC, f/k/a TII Holdings GP, LLC

GW Limited 4, LLC, f/k/a TI GP, LLC

GW Limited 5, L.P., f/k/a Transport Industries, L.P.

GW Limited 6, LLC, f/k/a TI SUB GP, LLC

GW Limited 7, L.P., f/k/a Greatwide Dedicated Transport, L.P.

GW Limited 8, Inc., f/k/a Greatwide Dedicated Transport II, Inc.

GW Limited 9, L.P., f/k/a Brisk Transportation, L.P.

GW Limited 10, LLC, f/k/a Greatwide Southpoint Holdings, LLC

GW Limited 11, Inc., f/k/a Sunshine Carriers, Inc.

GW Limited 12, Inc., f/k/a Southpoint Distributing, Inc.

GW Limited 13, LLC, f/k/a TIH Am-Can Holding Company, LLC

GW Limited 14, LLC, f/k/a A-C Leasing, L.L.C.

GW Limited 15, Inc., f/k/a Am-Can Transport Service, Inc.

GW Limited 16, LLC, f/k/a A-C Logistics, L.L.C.

GW Limited 17, Inc., f/k/a Greatwide Dedicated Transport III, Inc.

GW Limited 18, Inc., f/k/a CDL Leasing, Inc.

GW Limited 27, L.P., f/k/a Bachelor Creek, Ltd.

GW Limited 28, L.P., f/k/a Avenue W, Ltd.

GW Limited 29, LLC, f/k/a Transport Industries Equipment Services, L.L.C.

GW Limited 30, LLC, f/k/a RKHL Holdings, LLC

GW Limited 31, Inc., f/k/a RK Holdings and Leasing, Inc.

GW Limited 32, Inc., f/k/a Total Warehousing, Inc.

GW Limited 33, LLC, f/k/a Total Warehousing/Ontario, L.L.C.

GW Limited 34, LLC, f/k/a TIH Cargo-Master Holding Company, LLC

GW Limited 35, Inc., f/k/a Cargo-Master, Inc.

GW Limited 36, Inc., f/k/a Golman-Hayden Company, Inc.

GW Limited 37, Inc., f/k/a Greatwide Canada Holdings, Inc.

GW Limited 38, LLC, f/k/a American Trans-Freight, LLC

GW Limited 39, LLC, f/k/a Cheetah Transportation, LLC

GW Limited 40, LLC, f/k/a Greatwide Truckload Management, LLC

GW Limited 41, LLC, f/k/a Trans Coastal Trucking, L.L.C.

GW Limited 42, LLC, f/k/a National Transportation Specialists, LLC

GW Limited 43, LLC, f/k/a ATF Van, LLC

GW Limited 44, LLC, f/k/a ATF Trucking, LLC

GW Limited 19, LLC, f/k/a CDL Diesel Repair, LLC

GW Limited 20, Inc., f/k/a Camrett Brokerage, Inc.

GW Limited 21, Inc., Greatwide Transportation Management Services, Inc.

GW Limited 22, LLC, f/k/a May Trucking, LLC

GW Limited 23, L.P., f/k/a Greenhead, Ltd.

GW Limited 24, L.P., f/k/a Cousins, Ltd.

GW Limited 25, Inc., f/k/a Stewart Stiles Truck Line, Inc.

GW Limited 26, L.P., f/k/a Avenue K, Ltd.

GW Limited 45, LLC, f/ka ATF Management, LLC

GW Limited 46, LLC, f/k/a ATF Flatbed, LLC

GW Limited 47, LLC, f/k/a ATF Leasing, LLC

GW Limited 48, LLC, f/k/a ATF Logistics, LLC

GW Limited 49, LLC, f/k/a Dallas & Mavis Holdings, LLC

GW Limited 50, LLC, f/k/a Dallas & Mavis Specialized Carrier Co., LLC

GW Limited 51, Inc., f/k/a GWLS Holdings, Inc.